```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  JESSICA DISTEFANO,

                         Plaintiff,              MEMORANDUM & ORDER
                                                   20-CV-4634(EK)
             -against-

  COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff Jessica DiStefano challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny DiStefano's motion.

## I. Background

**A. Procedural Background**

In October 2015, DiStefano applied for disability benefits, alleging a disability onset date of June 15, 2014. Administrative Tr. ("Tr.") 10, ECF No. 10. The agency denied her claim. *Id.* On May 22, 2018, an administrative law judge ("ALJ") held a hearing on DiStefano's claim. *Id.* The ALJ concluded that DiStefano was not disabled and therefore not entitled to disability benefits. *Id.* at 10-19. The agency's

Appeals Council denied DiStefano's request for review of the ALJ's decision, rendering it final. *Id.* at 1. DiStefano timely sought review of that decision in this Court. ECF No. 1.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or a combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, then at step three, he must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt.

2

404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, the ALJ determined that DiStefano had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. He further determined that DiStefano suffered from the following "severe impairments": fibromyalgia, Sjogren's syndrome (an autoimmune disorder), "conversion disorder," "unspecified" depressive disorder, and obsessive-compulsive disorder. *Id.* He also concluded, however, that none of these impairments rose to the level of a Listed Impairment. *Id.*

When the ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he must determine a claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most a claimant can do in a work setting notwithstanding her limitations. *Id.* § 404.1545(a)(1). The ALJ concluded here that DiStefano had the RFC to perform "light work" with limitations. Tr. 14-15. He found that she could sit for eight hours in a workday and stand or walk for six; lift and carry twenty pounds occasionally and ten pounds frequently; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id.* He also concluded that DiStefano could perform unskilled tasks in a "low stress job," which he defined as requiring only occasional decision making, occasional changes in

3

the work setting, and occasional interaction with coworkers and the public.  *Id.* at 15.  The ALJ's RFC determination also included that she could never climb ladders or scaffolds.  *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ found that DiStefano could not perform her any of her past work as a retail manager, customer service clerk, reservations agent, or waitress.  Tr. 18-19.  At step five, the ALJ decides whether the claimant can perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).  The ALJ determined that DiStefano could perform such jobs, including as an "office helper," photocopy machine operator, and collator.  Tr. 19.  Given that determination, the ALJ concluded that DiStefano was not disabled.  *Id.* at 20.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

4

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

DiStefano raises three arguments on appeal. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 20-25, ECF No. 14. First, she argues that the ALJ violated the "treating physician rule" by rejecting the opinion of her treating physician — Dr. Mark Gudesblatt, a board-certified neurologist — without first recontacting him to gather more information. *Id.* at 20. Second, she argues that the ALJ improperly neglected to consider, in step three of his analysis, evidence that DiStefano "had been decompensating at work," and thus he erred in concluding that she did not meet the criteria for a Listed Impairment — specifically, Listing 12.07. *Id.* at 23. Finally, she argues that the ALJ erred by improperly disregarding the assessment of Dr. Paula Grossman — DiStefano's treating psychiatrist — that DiStefano was chronically fatigued

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

because her obsessive thoughts kept her up all night. *Id.* at 24. DiStefano's claims lack merit.

**A. Compliance with the Treating Physician Rule**

The "treating physician rule" applies because DiStefano filed her claim before March 27, 2017. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). Under this rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess*, 537 F.3d at 128.

Nevertheless, the rule still permits an ALJ to discount a treating physician's opinion when it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "Once the ALJ decided not to afford controlling weight to the treating physicians' opinions, she was required to explicitly review the factors listed in 20 C.F.R. § 404.1527(c) to determine what (if any) lesser weight to give those opinions." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). These factors include "the length of the treatment relationship and the frequency of examination; . . . the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the

6

consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129. But even if an ALJ fails to comply with the treating physician rule, "where application of [that] rule could lead to only one conclusion, *i.e.*, that the claimant was not disabled," this conclusion "obviat[es] the need for remand." *Messina v. Comm'r of Soc. Sec.*, 747 F. App'x 11, 17 (2d Cir. 2018).

Here, Dr. Gudesblatt opined that DiStefano was "disabled" due to light-headedness and extreme fatigue related to postural orthostatic tachycardia syndrome ("POTS"), Sjogren's disorder, and fibromyalgia. Tr. 967-69, 1267-69; *see also id.* at 101-02 (referring to DiStefano's "chronic disabling condition"). According to Dr. Gudesblatt, DiStefano was limited to two hours of sitting and one hour of standing and/or walking in an eight-hour workday, *id.* at 967-68; she could occasionally reach, handle, finger, and feel, but never push or pull, *id.* at 969; and daily activities caused her extreme fatigue. *Id.* The ALJ gave this opinion "lesser weight" because the limitations that Dr. Gudesblatt found were "inconsistent with the claimant's activities of daily living" cited by other doctors, as well as the physical exam notes of Dr. Syed Asad, an agency consultative examiner, and later notes from Dr. Gudesblatt himself. *Id.* at 18.

7

The ALJ did not err in discounting Dr. Gudesblatt's opinion. First, the ALJ properly rejected Dr. Gudesblatt's conclusion that DiStefano was "permanently disabled," *see id.* at 972, given that disability is an ultimate legal issue "reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(d)(1) (a medical source's statement "that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").

Second, the ALJ did not violate the treating physician rule by declining to seek additional information from Dr. Gudesblatt. DiStefano argues that because the ALJ pointed to inconsistencies in the record but did not reach out to clear them up, he left an impermissible gap in the record. The ALJ left no such gap, however, because DiStefano's medical record contained sufficient information regarding her physical limitations — such as her ability to sit, stand, walk, and use her hands — to render a decision. Consistent with 20 C.F.R. § 404.1545(a)(3), the ALJ considered numerous factors in evaluating DiStefano's RFC, including medical evidence, non-medical evidence, and her own statements about her daily activities. Tr. 14-18. Further, pursuant to 20 C.F.R. § 404.1527, the ALJ considered and weighed the testimony of medical experts Drs. Justin Willer and Jennifer Blitz; the medical opinions of consultative examiners Drs. Asad, Kathleen

Acer, and Gerald Galst; and the medical opinions of DiStefano's treating physicians Drs. Grossman and Gudesblatt. *Id.* at 15-18. And contrary to DiStefano's argument, the regulations in effect at the time of the ALJ's decision no longer required the ALJ to recontact a treating physician when the evidence from that physician is "inadequate" for the ALJ to determine whether the claimant is disabled. *Compare* 20 C.F.R. § 404.1512 (effective June 13, 2011 to Mar. 25, 2012) (requiring this practice) *with* 20 C.F.R. § 404.1512 (effective Mar. 27, 2017 to present) (requiring no such effort); *see also Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 555 (2d Cir. 2020) ("We apply the version of the social security regulations and rulings in effect at the time of the ALJ's decision.").

Given this record, the ALJ properly discounted Dr. Gudesblatt's opinion because it was not supported by substantial evidence. An ALJ may discount a treating physician's opinion where, as here, it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32. The ALJ gave "good weight" to the opinions of Drs. Willer and Blitz, medical experts who based their opinions on a review of the record, Tr. 16, and whose opinions were not consistent with Dr. Gudesblatt's. For example, Dr. Willer testified that the record was not consistent with a diagnosis of POTS, but rather with a diagnosis of

9

"conversion disorder," which does not meet the criteria for a Listed Impairment under Section 12.07. *Id.* at 35, 38. As the ALJ noted, Dr. Willer's opinion was consistent with the opinions of Drs. Galst and Horacio Kaufman (who examined DiStefano in May of 2015), both of whom rejected the POTS diagnosis. *Id.* at 15, 36, 483-84. Dr. Willer also testified that the record did not contain evidence establishing disabling limitations. *Id.* at 15-16, 33-38. And Dr. Blitz opined that she did not see "any extreme limitations from a mental standpoint," and that DiStefano's impairments imposed no more than mild to moderate functional limitations. *Id.* at 59-65. In addition to treatment notes, which she said did not support extreme limitations, Dr. Blitz relied on DiStefano's activities, including travelling internationally and socializing. *Id.* These findings were not consistent with Dr. Gudesblatt's finding of permanent disability.

The opinion of Dr. Galst, a cardiologist, was also inconsistent with that of Dr. Gudesblatt. Regarding fibromyalgia, Dr. Galst opined that DiStefano had no trigger points; regarding Sjorgen's syndrome, Dr. Galst said laboratory testing showed no active autoimmune disorder; and, as noted above, he rejected the POTS diagnosis. *Id.* at 1029-33. Consistent with the ALJ's determination, Dr. Galst concluded that DiStefano could perform a reduced range of light work: she

10

could lift and carry up to twenty pounds occasionally and ten pounds frequently, sit eight hours, stand two hours, and walk two hours. *Id.* at 16, 1022-23. Yet because Dr. Galst was retired and not available to testify about his conclusions, the ALJ gave his opinion "no weight." *Id.* at 17.

Finally, the opinions of two consultative physicians, Drs. Asad and Acer, also contradicted Dr. Gudesblatt's opinion. "The report of a consultative physician may constitute . . . substantial evidence" by which to compare the treating physician's opinion. *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011). Dr. Asad, an independent examiner at the Division of Disability Determination to whom DiStefano was referred for an examination in 2016, concluded that she had "no physical limitations," except that she should avoid uneven surfaces due to the risk of dizziness. Tr. 17, 522. The ALJ gave Dr. Asad's opinion "some weight," noting that the finding of "no limitations" at all was not consistent with the record. *Id.* at 17. The ALJ also gave "some weight" to the opinion of Dr. Acer, who found that although DiStefano's impairments affected her memory, attention, and concentration, she could understand and remember simple instructions, directions, and perform routine tasks. *Id.* at 527. Dr. Acer concluded that while the results of DiStefano's evaluation appeared consistent

11

with psychiatric issues, they did not appear to severely hamper her functioning. *Id.*

In sum, the ALJ sufficiently developed and considered the medical record, and properly discounted Dr. Gudesblatt's opinion without creating a gap in the evidence.

**B.   Evidence of "Decompensation" at Work**

DiStefano's next argument — that she meets the criteria for a Listed Impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.07 for conversion or somatoform disorders because she was "decompensating at work" — also fails. Pl. Mem. 23.  Dr. Willer, a medical expert, testified that if the record presented evidence that DiStefano had been "decompensating at work," he might agree that her conversion disorder was a Listed Impairment under Section 12.07.  Tr. 35, 37.  DiStefano contends that the evidence demonstrates that she did experience decompensation at her job as a travel agent – that, for example, she had a successful year in 2013 but, as of April 2014, she reported that she took four days off from work in one month due to dizziness and imbalance, lost motivation to see friends, and felt tired.  Pl. Mem. 23; Tr. 914.

DiStefano's "decompensation" argument is misplaced, however, because she relies on an outdated version of the regulations.  Although a previous version of Section 12.07, which existed prior to May 2016, took into consideration

12

"decompensation" in assessing the severity of a mental disorder, the agency has since issued "Revised Medical Criteria for Evaluating Mental Disorders" that eliminated this language from the listing. *See* 81 Fed. Reg. 66138 (Sept. 26, 2016). *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07 (effective Sept. 29, 2016 to Jan. 16, 2017) (including language regarding "repeated episodes of decompensation, each of extended duration") *with* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07 (effective May 22, 2018 to Sept. 23, 2019).

Under the current regulations, to meet a Listed Impairment under paragraph B of Section 12.07, a claimant must show an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning: "(1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07. The ALJ properly considered these factors in concluding that DiStefano's impairments did not meet the criteria. *See* Tr. 14 (finding no more than mild limitations in DiStefano's ability to understand, remember, or apply information, and no more than moderate limitations in the other three functional areas). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of

13

those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  DiStefano does not challenge the ALJ's findings in these functional areas, and has not otherwise met her burden at step three of showing that she meets or equals a Listed Impairment under the regulations.

**C.   Evidence of Chronic Fatigue**

Finally, DiStefano contends that the ALJ ignored the assessment of her psychiatrist, Dr. Grossman, who concluded that she was chronically fatigued due to her obsessive-compulsive disorder.  Pl. Mem. 24.  Dr. Grossman determined that she had marked to extreme limitations in all areas of mental functioning, that she was unable to work in any capacity, and that her severe fatigue caused physical and mental incapacity.  Tr. 921.  The ALJ considered Dr. Grossman's assessment but gave it "little weight."  *Id.* at 18.  Several factors support the ALJ's decision to discount that opinion.

First, the ALJ properly disregarded Dr. Grossman's conclusion that DiStefano was unable to work in any capacity, as that is an ultimate legal issue reserved for the Commissioner. *See Snell*, 177 F.3d at 133-34; 20 C.F.R. § 404.1527(d)(1).

Second, as the ALJ noted, Dr. Grossman's conclusion was not consistent with her own treatment notes.  Tr. 18.  Despite Dr. Grossman's conclusion that DiStefano had moderate to marked limitations in interacting appropriately with the public

14

and with coworkers in part due to her fatigue, *id.* at 922, Dr. Grossman's treatment records indicated that DiStefano maintained a relationship with her boyfriend; socialized with friends, including going out to dinner and concerts; and traveled to multiple places for vacation. *Id.* at 700, 723, 725, 734, 739, 744, 760, 828. Dr. Grossman's treatment notes were also inconsistent with her assessment that DiStefano had marked limitations in her ability to understand, remember, and carry out simple instructions, *id.* at 921; her records indicate that DiStefano spent her time reading, using the computer, playing games and puzzles on her phone and iPad, all of which would require DiStefano to understand, remember, and follow simple instructions. *Id.* at 699, 707.

Third, Dr. Grossman's conclusion was inconsistent with other medical evidence in the record, discussed above. *See Halloran*, 362 F.3d at 32 (ALJ may discount treating physician's opinion where it is "not consistent with other substantial evidence in the record"). In particular, Dr. Grossman's assessment did not align with the expert testimony of Dr. Blitz, who opined that DiStefano could perform simple, routine tasks; interact occasionally with supervisors and co-workers; make occasional work-related decisions; and adapt to change. Tr. 1050.

15

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies DiStefano's motion. The Clerk of Court is respectfully directed to enter the judgment and close this case.

SO ORDERED.

                                               /s/ Eric Komitee
                                               ERIC KOMITEE
                                               United States District Judge

Dated:     September 13, 2023
             Brooklyn, New York